UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSICA GREENSHNER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EVENFLO COMPANY, INC.,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Jessica Greenshner ("Plaintiff"), on behalf of herself and all others similarly situated, brings this action pursuant to the Indiana Uniform Commercial Code, Indiana Deceptive Consumer Sales Act and common law against defendant Evenflo Company, Inc. ("Evenflo") in connection with the misleading marketing and sale of poorly designed, mislabeled and defective "Big Kid" model car safety seats to the Plaintiff and other unsuspecting consumers.

Plaintiff's allegations are based upon personal knowledge as to herself and her own actions, and upon information and belief, as to all other matters, which are based upon, among other things, the investigation of counsel.

## NATURE OF THE ACTION

1. Evenflo Company, Inc. principally engages in the design, research and development, manufacturing, marketing and sale of products for babies and small children, including car seats, booster seats, travel systems, safety gates, high chairs, play yards,

stationary activity centers, infant carriers and doorway jumpers. Evenflo Company Inc. has two manufacturing facilities: one in Piqua, Ohio, and one in Tijuana, Mexico.

2. The Evenflo "Big Kid" booster seats ("Big Kid Booster Seat") is a high back booster seat that Evenflo has marketed for children who weigh as little as 30 lbs. and, only until recently, began to market the Big Kid Booster Seats for children as little as 40 lbs. As set forth below, the Big Kid Booster Seats are not safe for children of any age and, in fact, are dangerous in a side impact crash.

3. In fact, a recent investigation by ProPublica showed that Evenflo sold child booster car seats about which the company's engineers raised safety concerns, while the company misleadingly advertised those car seats as "SIDE IMPACT TESTED." In fact, those tests had shown that the seats posed a grave danger to a child in case of a crash.[1]

4. Defendant's marketing of this product as safe for children weighing under 30 lbs. and safe overall in a side impact crash is dangerously false and misleading, as the product is not safe in a side impact crash and was never properly "side impact tested".

5. The Big Kid Booster Seats are inherently unsafe as a booster seat and unfit for its intended use. Use of the seats pose a number of serious safety risks that have led to many documented injuries of children that used the Big Kid Booster Seat who were in a side impact crashes.

6. Plaintiff, like other Class members, purchased and/or owned the Big Kid Booster Seats while unwittingly and unaware of its dangers and suffered damages in that Plaintiff, and

---

[1] Daniela Porat, Patricia Callahan (2020-02-06). "Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety". *ProPublica*. Retrieved 2020-02-07.

2

other Class members, had to purchase an alternative to the Big Kid Booster Seat and/or lost the benefit of their bargain because they would not have purchased and/or owned the Big Kid Booster Seat had they known they it was not safe.

## PARTIES

7. Plaintiff Jessica Greenshner, at all times relevant hereto, was a citizen of the state of Indiana. She purchased Evenflo's Big Kid Booster Seat for her son on January 5, 2019.

8. Defendant Evenflo is a Delaware Corporation that maintains its national headquarters in Canton, Massachusetts.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from the defendant.

10. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. The Court has personal jurisdiction over Defendant Evenflo because Evenflo has regular and systematic contacts with the state of Massachusetts and places its products into the stream of commerce.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendant maintains its headquarters is in this District.

## FACTUAL ALLEGATIONS

13. Evenflo states that it is a leading manufacturer and marketer of infant and juvenile products, including car/booster seats.  Evenflo is a wholly owned subsidiary of Hong

Kong based Goodbaby International Holdings Limited ("Goodbaby"). Evenflo maintains its headquarters in Canton, Massachusetts and manufacturing facilities in Piqua, Ohio and Tijuana, Mexico. Evenflo sells its products through national retail stores such as Walmart and Target as well as online via Amazon and direct to consumer through its website evenflow.com.[2]

14. Evenflo's Big Kid Booster Seats model car seats are high back booster seats that Evenflo marketed for use by young children who weigh as little as 30 pounds. Evenflo markets Big Kid Booster Seats in a variety of fashions including the LX and Amp models.

15. To maximize sales of Evenflo's Big Kid Booster Seats, the Company marketed Big Kid Booster Seats as safe for use by children as small as 30 pounds despite repeated warnings by Evenflo engineers that the Big Kid Booster Seats were not safe for children under 40 pounds.[3]

16. In 2008, Evenflo added curved extensions that protrude from the backrest of the Big Kid Booster Seats called side wings to create the appearance of increased protection from a side impact car crash (see Figure 1 below). Evenflo believed consumers' on-shelf perception of the Big Kid Booster Seats' side protection was lacking compared to a competitor's product, the Graco Turbobooster child car seat. The Big Kid Booster Seat line was a top-selling booster seat in the United States with more than 18 million sold.[4]

---

[2] https://www.evenflo.com/car-seats/big-kid/us_bigkid.html?dwvar_us__bigkid_fashion=31912230&cgid=car-seat-booster#start=9

[3] Daniela Porat, Patricia Callahan (2020-02-06). "Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety". *ProPublica*. Retrieved 2020-02-07.

[4] *Id.*

4

Figure 1



17. Evenflo conducted simulated side-impact car crash tests of Big Kid Booster Seats with side wings compared to earlier Big Kid Booster Seat model without side wings. The Big Kid Booster Seats with side wings provided no additional protection in side-impact crash tests than the Big Kid Booster without side wings. Evenflo engineer, David Sander, stated "We side-impact test our seats," . . . "but I don't think we say that we offer any type of side-impact protection". [5]

18. The photos below show simulated side-impact car crash testing on March 24, 2008 of a Big Kid Booster Seat with no side wings and on August 28, 2008 of Big Kid Booster Seat with side wings.[6]

---

[5] *Id.*
[6] *Id.*






 

19. The simulated side-impact car crash tests that Evenflo conducted showed the seat belt on a child sitting in a Big Kid Booster with side wings was prone to slip off the child's shoulder potentially leading to abdominal, brain and spinal injuries to a real child, including paralysis or death.[7]

20. Despite test results showing that the Big Kid Booster with side wings did not improve protection in side impact car crashes, Evenflo marketed the Big Kid Boosters with side wings as "SIDE IMPACT TESTED", intentionally creating a false impression that the side wings provided an added safety benefit. [8]

 

---

[7] *Id.*
[8] *Id.*

21. Evenflo misleadingly represents that its products are thoroughly tested and safe. For example, Evenflo's "Promise on Safety" claims:

> To us, it just doesn't get much more important than delivering products that help keep your little ones safe. We're parents just like you are so we build products that we would trust and use for our own children. That's why we rigorously test all of our products again and again. Every bounce, twist, turn and latch is tested to make sure our products are safe, durable and comfortable.
>
> Evenflo tests all of our car seats to energy levels approximately twice that of the federal crash test standard. Additionally, our engineers developed the Evenflo Side Impact test protocol, which simulates the energy in severe 5-star government side impact tests conducted for automobiles. . . [9]

22. Evenflo's deceptive marketing fails to disclose to consumers that its Side Impact test protocol was merely a marketing gimmick and not intended to test whether a child would be protected in a side-impact crash from injury, including even serious injury or death.

23. The basis for an Evenflo side-impact test to result in a "fail" under the Company's protocol, was if the Big Kid Booster Seat broke apart or if the child was completely thrown from the Big Kid Booster Seat to the car floor. Side-impact test results that indicated a child was prone to suffer abdominal, brain and spinal injuries including paralysis or death were graded a "pass" according to Evenflo's Side Impact test protocol.[10]

24. According to ProPublica, Evenflo's top booster seat engineer admitted that if real children moved the way child-sized crash test dummies did in Evenflo's side-impact crash tests, they could suffer catastrophic head, neck and spinal injuries — or die.[11]

---

[9] https://www.cybexonlineshop.com/promise-on-safety.html
[10] Daniela Porat, Patricia Callahan (2020-02-06). "Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety". *ProPublica*. Retrieved 2020-02-07.
[11] *Id.*

8

25. Subsequent to the ProPublica investigation, the Evenflo website was changed to say the minimum weight requirement for the Big Kid Booster Seat is 40 pounds.[12]

26. However, ProPublica ordered another Big Kid from Evenflo's website and the booster's box, manual and label still misstated that it is safe for children as small as 30 pounds.[13]

27. It is still possible to purchase Evenflo Big Kid boosters with the out-of-date, unsafe parameters. Last month, ProPublica ordered two Big Kid Booster Seats directly from Evenflo's website. The boxes did not specify an age for use. The labels said they were safe for children weighing as little as 30 pounds.[14]

28. However, the Big Kid Booster Seats are inherently unsafe as a child booster car seat and unfit for its intended use for children of *any* weight, as its use poses a number of serious safety risks that have led to many documented injuries of children that used the Big Kid Booster Seat and were in a side-impact crash.

29. Plaintiff, like other Class members, purchased and/or owned the Big Kid Booster Seats unwittingly and unaware of its dangers and suffered damages in that they had to purchase an alternative to the Big Kid Booster and/or lost the benefit of their bargain because they would not have purchased and/or owned the Big Kid Booster had they known they were not safe.

## CLASS ACTION ALLEGATIONS

30. Pursuant to Federal Rule of Civil Procedure 23, including subsections (b)(2), (b)(3), and (c)(4), Plaintiff Greenshner, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and on behalf of the proposed Classes:

**Nationwide Class:** All persons in the United States who purchased the Big Kid Booster

---

[12] *Id.*
[13] *Id.*
[14] *Id.*

9

Seat or any model of the Big Kid Booster Seat between 2008 and the present (the "Class").

**Indiana Subclass**: All persons in Indiana who purchased the Big Kid Booster Seat or any model of the Big Kid Booster Seat between 2008 and the present (the "Indiana Subclass").

31. Excluded from the Classes are the Defendant and any entities in which Defendant or its parent, subsidiaries or affiliates have a controlling interest, and Defendant's officers, agents, and employees. Also excluded from the Classes are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate family. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

32. **Numerosity:** The members of each Class are so numerous that joinder of all members of any Class would be impracticable. Plaintiff reasonably believes that members of each of the Classes total well over 1,000 persons. The names and addresses of Class members are identifiable through, among other things, documents maintained by Defendant.

33. **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

    a. Whether Defendant owed a duty of care to Plaintiff and members of the Classes;

    b. Whether Defendant was negligent or grossly negligent in representing the Big Kid Booster Seats were side-impact tested and safe.

    c. Whether Defendant represented through advertising, marketing, and labeling that the Big Kid Booster Seats were safe in a side-impact crash;

    d. Whether the representations and/or omissions Defendant made through its advertising, marketing, and labeling are false, misleading, or deceptive;

10

  e. Whether Defendant's representations and/or omissions in advertising, marketing, and labeling are likely to mislead a reasonable consumer;

  f. Whether Defendant had knowledge that its representations and/or omissions in advertising, marketing, and labeling were false, deceptive, or misleading;

  g. Whether Defendant engaged in unlawful, fraudulent, or unfair business practices;

  h. Whether Defendant violated statutes and/or common law as described herein;

  i. Whether Plaintiff and the other Class members are entitled to damages; and

  j. Whether Plaintiff and the other Class members are entitled to declaratory or injunctive relief.

34. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

35. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct by Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and of other Class members arise from the same operative facts and are based on the same legal theories.

36. **Adequacy of Representation:** Plaintiff is an adequate representative of the

Class because her interests do not conflict with the interests of the other Class members she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

37.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

38.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

39.     Likewise, particular issues under Rule 23(c)(4) of the Federal Rules of Civil Procedure are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, those set forth in

paragraph 33 above, which are incorporated by reference herein.

### First Claim for Relief
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Indiana Subclass)**

40. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

41. Plaintiff brings this count on behalf of herself and the Indiana Class.

42. The UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314 has been adopted in Indiana, to Ind. Code § 26-1-2-314, and in 35 other states.

43. As set forth above, Plaintiff has standing to pursue this claim as she has suffered injury in fact and has lost money or property as a result of Defendant's actions.

44. Defendant is a "merchant" within the meaning of UCC § 2-314 because Evenflo is a merchant with respect to the Big Kid Booster Seat.

45. Defendant sold and Plaintiff purchased the Big Kid Booster Seat from authorized resellers of Defendant's Big Kid Booster Seat.

46. By placing such products into the stream of commerce, and by operation of law of the Ind. Code § 26-1-2-314, Defendant impliedly warranted to Plaintiff and Class members that the Big Kid Booster Seat was of merchantable quality.

47. Defendant breached the warranty implied in the contract for the sale of the Big Kid Booster Seat because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promises or affirmations of fact made on the container or label." See Ind. Code § 26-1-2-314 (listing requirements for merchantability). As a result, Plaintiff and Class members did not receive the goods as impliedly represented by Defendant to be merchantable.

13

48. Defendant breached the implied warranty of merchantability because the Big Kid Booster Seat was not safe in a side impact crash and was defectively designed or suffered from an inherent defect, rendering the Big Kid Booster Seat unfit for its intended use and purpose. This defect substantially impairs the use, value and safety of the Big Kid Booster Seat.

49. Defendant misled consumers into believing that the Big Kid Booster Seat was safe for use. Defendant took advantage of Plaintiff's and the Class' trust and confidence in its brand, and deceptively sold the Big Kid Booster Seat, knowing that it could cause serious injury and even death.

50. Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and the Class, not distributors who sold the Big Kid Booster Seat. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Big Kid Booster Seat, which are the same place that Plaintiff purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Big Kid Booster Seat in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchased the Big Kid Booster Seat.

51. Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they would not have purchased the Big Kid Booster Seat if they knew the truth about the Booster Seat and that product they received was worth substantially less than the product they were promised and expected.

52. Accordingly, Plaintiff is entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

### Second Claim for Relief
### NEGLIGENT MISREPRESENTATION
**(On Behalf of the Nationwide Class and the Indiana Subclass)**

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

54. Since 2008, Defendant consistently represented to the public in its websites, marketing materials, and packaging of the Big Kid Booster Seat that product was safe, thoroughly tested and its design provided a safety benefit in side-impact car crashes.

55. Plaintiff relied on Defendant's misrepresentations in purchasing and using the Big Kid Booster Seat.

56. At the time of sale of each Big Kid Booster Seat, Defendant should have known that these representations about the safety of the Big Kid Booster seat product were false.

57. Defendant's representations that the Big Kid Booster Seat was safe, thoroughly tested and its design provided a safety benefit in side-impact car crashes were material to the purchasing decisions of Plaintiff and the consuming public.

58. Defendant failed to exercise reasonable care or competence in communicating information regarding the testing design and safety of the Big Kid Booster Seat.

59. These misrepresentations were made uniformly to the consuming public, including the members of the Classes. Plaintiff, and members of the Classes similarly situated to Plaintiff, relied on Defendant's representations, and would not have purchased and/or owned a Big Kid Booster Seat had Defendant made the representations about its design, safety and testing.

60. As a result of Defendant's negligent misrepresentations concerning the Big Kid Booster Seat, Plaintiff and members of the Classes have been damaged.

61. Plaintiff and members of the Classes have also been harmed by the same negligent misrepresentations because they were induced to purchase and/or own a product unfit for its intended use and therefore without value.

## Third Claim for Relief
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class and the Indiana Subclass)**

62. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

15

63.     Defendant has knowingly and willingly accepted and enjoyed the benefits of Plaintiff and Class members purchasing or causing the purchase the Big Kid Booster Seats.

64.     Defendant should not be able to retain the benefit of the funds paid because the members of the Classes rendered payment with the expectation that the Big Kid Booster Seat would be as represented and warranted – a well-designed product that was thoroughly tested and provided safety in a side-impact car crash.

65.     Defendant deliberately misrepresented and omitted material facts regarding the actual dangers posed by the flawed design of the Big Kid Booster Seat, the meaningless side-impact testing of the Big Kid Booster Seat, and the illusory protection provided by the Big Kid Booster Seat in a side-impact car crash. Through those misrepresentations and omissions, the Plaintiff and members of the Classes purchased the Big Kid Booster Seat through which the Defendant profited.

66.     Equity dictates that Defendant's ill-gotten gains be disgorged, and that the Plaintiff and members of the Classes are entitled to restitution.

### Fourth Claim for Relief
**VIOLATIONS OF INDIANA'S DECEPTIVE CONSUMER SALES ACT**
**(On behalf of the Indiana Subclass)**

67.     Plaintiff brings this count pursuant to the Indiana Deceptive Consumer Sales Act (the "DCSA" or the "Act"), Indiana Code § 24-5-0.5-1 to -12, on behalf of herself and the Indiana Class and repeats and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

68.     The purposes and policies of the Act are to:

(1)     simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

(2)     protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

(3) encourage the development of fair consumer sales practice.

Ind. Code § 24-5-0.5-1(b).

69. The Indiana General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. Ind. Code § 24-5-0.5-1(a).

70. Evenflo is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familial, or household purpose, such as those at issue in this action. Ind. Code § 24-5-0.5-2(1), (3).

71. The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

72. Evenflo committed deceptive acts as described above, including but not limited to purposely marketing its Big Kid Booster Seats as safe during a side impact crash.

73. Evenflo's violations were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts under the DCSA. The violations were formulated and carried out by Evenflo in order to continue selling its Big Kid Booster Seats and constitute an unfair abusive and/or deceptive act under the statute.

74. The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand ($1,000). Ind. Code § 24-5-0.5-4(a)

75. The DCSA provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member . . . ." Ind. Code § 24-5-0.5-4(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes, respectfully requests that this Court enter an Order:

- a. Certifying the Nationwide Class and/or Indiana Subclass appointing Plaintiff Greenshner as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel under Rule 23 of the Federal Rules of Civil Procedure;

- b. A declaration that Defendant's failure to disclose the dangers of the Big Kid Booster Seat was negligent, deceptive, unfair, and unlawful;

- c. Finding that Defendant's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

- d. Finding that Defendant's conduct was in violation of the statutes and common law referenced herein;

- e. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

- f. Awarding Plaintiff and the other Class members statutory damages and penalties, as allowed by law;

- g. Awarding Plaintiff and the other Class members restitution and disgorgement;

- h. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest;

- i. Awarding Plaintiff and the other Class members reasonable attorneys' fees costs and expenses, and;

- j. Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED: March 31, 2020                                    Respectfully submitted,


/s/Christopher Weld, Jr.
Christopher Weld, Jr. (BBO # 522230)
Alycia M. Kennedy (BBO # 688801)
**TODD & WELD LLP**
One Federal Street
Boston, MA 02110
Telephone: 617-720-2626
Facsimile:  617-227 5777
cweld@toddweld.com

Melissa R. Emert (*pro hac vice* to be filed)
**STULL, STULL & BRODY**
6 East 45th Street-5th floor
New York, NY 10017
Telephone: 954-341-5561
Facsimile:  954-341-5531
memert@ssbny.com

Gary S. Graifman (*pro hac vice* to be filed)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: 845-356-2570
Facsimile:  845-356-4335
ggraifman@kgglaw.com

Kimberly A. Justice (*pro hac vice* to be filed)
Jonathan M. Jagher (*pro hac vice* to be filed)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-234-6487
Facsimile: 224-632-4521
kjustice@fklmlaw.com
jjagher@fklmlaw.com